T.C. Memo. 2002-275

UNITED STATES TAX COURT

SALVATION NAVY, INC., Petitioner <u>v</u>. COMMISSIONER OF
INTERNAL REVENUE, Respondent

Docket No.  7013-01X.                Filed October 30, 2002.

Based upon the facts contained in the
administrative record, <u>Held</u>:  Petitioner is not
operated as an organization entitled to exemption under
sec. 501(c)(3), I.R.C.

David A. Valfer (an officer), for petitioner.

<u>Linda P. Azmon</u>, for respondent.

MEMORANDUM OPINION

NIMS, <u>Judge</u>:  Respondent determined that petitioner

Salvation Navy, Inc. (SNI), does not qualify as a section

501(c)(3) charitable organization and, therefore, is not exempt from Federal taxation under section 501(a). Pursuant to section 7428 and title XXI of the Tax Court Rules of Practice and Procedure, SNI seeks a declaratory judgment that it is a qualified organization under section 501(c)(3). The issue for decision is whether SNI operates exclusively for charitable purposes. Unless otherwise indicated, all section references are to sections of the Internal Revenue Code in effect at the time the petition was filed, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

The administrative record, which includes all of the facts upon which the Commissioner made the final adverse determination, was submitted to the Court under Rule 217(b)(1) and is incorporated herein by this reference.

SNI was incorporated on April 7, 1976, under the Nonprofit Corporation Law of Pennsylvania. Its principal office is located in Hartford, Connecticut. The founder, sole director, and officer of SNI is David A. Valfer (Valfer).[1]

---

[1] In response to a question posed by an IRS Exempt Organization Specialist as to how the name "Salvation Navy" relate(s) to the organization, SNI responded as follows:

On New Year's Eve, 1975, at a police station in Boston, MA, when told that David got kicked out of the Salvation Army shelter, the policeman told him to go to the Salvation Navy. He returned to Philadelphia, PA Articles of Incorporation were drawn up, then on to the

(continued...)

On May 2, 1999, SNI filed a Form 1023, Application for Recognition of Exemption Under Section 501(c)(3) of the Internal Revenue Code, with the IRS, seeking recognition of exemption under section 501(c)(3) of the Internal Revenue Code. In its Articles of Incorporation, SNI stated that one of its purposes is to "find out where one goes when he or she leaves", and that SNI "does not contemplate pecuniary gain or profit, incidental or otherwise." On the Form 1023, SNI recited that its activities include charitable work performed on a volunteer basis by petitioner's founder and Chief Executive Officer (CEO), David A. Valfer.

SNI further indicated on Form 1023 that its sources of financial support came solely from Valfer's Supplemental Social Security income, aid to the disabled income, medicaid payments, and food stamps. SNI also indicated that it had no fund-raising program in place and had no revenue or expenses during the taxable years 1995 through 1998. The administrative record does not reveal that SNI kept any financial books and records.

Attached to the Form 1023 were several documents containing citations and statements of recognition commemorating Valfer's 20 years of community service to the City of Hartford, Connecticut, which included his volunteer activities at a Hartford weekend

---

[1](...continued)
Department of State in Harrisburg, paid 75 dollars and was incorporated on April 7, 1976.

Senior Citizen Center, a church-sponsored soup kitchen, and various churches.

By letter dated July 19, 1999, the IRS required that SNI amend its Articles of Incorporation to meet the organizational test for exemption under section 501(c)(3). SNI complied by amending its Articles of Incorporation to delete the statement that one of its purposes is to "find out where one goes when he or she leaves", leaving in place the additional provision that its purpose is to be "organized exclusively for charitable, religious, educational, literary, and/or scientific purposes under Section 501(c)(3) of the Internal Revenue Code."

SNI also responded to a number of questions raised by IRS in the July 19, 1999, letter. In response to a request that SNI advise IRS as to the charitable purpose of SNI's organization, and provide a listing of the charitable activities conducted by the organization, SNI responded:

> The charitable purpose of Salvation Navy, Inc. is to be an asset to the community and do good deeds. Although it does not say so, for the most part, David Valfer's activities, as stated in the Mayor's proclamation and the other citations that were with form 1023, were the same as the organization's activities.

In a further response to an IRS request that SNI describe in detail the activities it would conduct, SNI stated:

> Presently, volunteering Saturdays and Sundays is taking up 100% of * * * [Valfer's] weekends at Hartford's only weekend senior center, WESP. David needs to be there in time to say hello to the elderly citizens while he hands the milk out before the hot noon meal. When

necessary David replenishes the paper towels, toilet tissue, and soap in the restrooms.  In addition, he sets up the video to show a movie to a few seniors, including a blind man.  The show has to end just before two p.m. in order for Dial-a-Ride to take them to their respective residence.

SNI answered "yes" to the following question on the Form 1023:  "Do you want us to consider the application as a request for recognition of exemption as a section 501(c)(3) organization from the date the application is received and not retroactively to the date the organization was created or formed?"

In a further response to the July 19 letter, SNI indicated that "David" would like to receive a tax-exempt letter to be able to apply for a grant to procure a computer, a printer, and related software.  SNI indicated that after Valfer attended grant writing and computer classes, the organization planned to establish a website and homepage to start a chat room for the psychiatrically disabled.

In subsequent correspondence dated December 10, 1999, SNI indicated that it would also provide services as a "Shomer" (a night watchman) to funeral homes, mortuaries, and morgues to keep vigil through the night and into the mornings for persons who are deceased and of the Jewish faith.  SNI indicated that an offering of between $75 and $90 per 12-hour vigil "would be accepted by the Shomer for the organization."

By letter dated April 19, 2000, IRS requested that SNI modify its Board of Directors to place control in the hands of

unrelated individuals selected from the community which SNI serves. According to the IRS, this request for modification was made to ensure that SNI would serve the interests of the public, rather than the interests of a particular individual. Valfer refused the IRS request, stating that he does not trust any Board of Directors that might vote him out of the Salvation Navy, Inc.

On June 16, 2000, the IRS issued an initial adverse determination letter to SNI. SNI appealed to the IRS Office of Appeals, which issued to SNI a final adverse determination on April 4, 2001, denying tax-exempt status to SNI under section 501(c)(3).

## Discussion

Petitioner SNI bears the burden of proving that it is a section 501(c)(3) organization. See Rule 217(c)(2)(A). In order to meet this burden, SNI must show that the administrative record contains sufficient evidence to overcome the grounds stated in the notice of final adverse determination. See Nationalist Movement v. Commissioner, 102 T.C. 558, 572 (1994), affd. 37 F.3d 216 (5th Cir. 1994); At Cost Servs., Inc. v. Commissioner, T.C. Memo. 2000-329. The following reason was given in the Notice:

> Your organization is not organized or operated
> exclusively for charitable purposes. Additionally,
> part of the net earnings of your organization inure to
> the benefit of a private individual.
> Section 501(a) provides tax-exempt status for organizations

described in section 501(c). Section 501(c)(3) includes

"Corporations, and any community chest, fund, or foundation,

<u>organized and operated</u> exclusively for * * * charitable * * * purposes, * * * no part of the net earnings of which inures to the benefit of any private shareholder or individual." (Emphasis added.) Thus, the organization must be both organized <u>and</u> operated exclusively for at least one of the stated purposes. Sec. 1.501(c)(3)-1(a)(1), Income Tax Regs.

Respondent concedes that once SNI amended its Articles of Incorporation to delete that one of its purposes was to "find out where one goes when he or she leaves", so that the Articles now reflect that SNI's activities would be limited to charitable, religious, educational, literary, and/or scientific purposes, SNI meets the organizational test. However, respondent asserts that SNI fails to meet the operational test because SNI has not shown that it is not operated for the benefit of a private individual; i.e., David A. Valfer. See sec. 1.501(c)(3)-1(d)(1)(ii), Income Tax Regs.

We agree with respondent. As stated in the regulations, the operational test is as follows:

> An organization will be regarded as "operated
> exclusively" for one or more exempt purposes only if it
> engages primarily in activities which accomplish one or
> more of such exempt purposes specified in section

501(c)(3).  An organization will not be so regarded if more than an insubstantial part of its activities is not in furtherance of an exempt purpose.  [Sec. 1.501(c)(3)-1(c)(1), Income Tax Regs.]

As already noted, SNI desires recognition of exemption from the date the Form 1023 was received by the IRS, and not retroactively.  As also indicated above, SNI responded to a request for a detailed description of its contemplated future activities by reiterating a description of the activities in which Valfer was already engaged.  In its brief SNI concedes that "the Petitioner, SNI, and David A. Valfer are one and the same." However, SNI challenges respondent's contention that contributions to SNI inure to Valfer's benefit, because "The plain fact is that no contributions of either money or services have been received by SNI from any source other than Mr. Valfer." Nevertheless, Valfer, responding on behalf of SNI to the July 19, 1999 IRS letter, stated that he would like to receive "a Tax Exempt letter to apply for a grant to procure a computer, printer, and related software."  Since the affairs of SNI and Valfer are irretrievably intertwined, as Valfer/SNI readily admits, the benefits Valfer plainly hopes to obtain via the "Tax Exempt letter" would obviously inure to Valfer himself.

Similarly, SNI has not shown that compensation for Valfer's serving as a Shomer at a rate of $75 to $90 per 12-hour vigil would not inure to a private individual.  Petitioner SNI has not shown that the recipients of Valfer's services as a Shomer are

members of a charitable class, or that the fees SNI proposes to charge serve any purpose other than to provide a source of income for Valfer. Cf. Rev. Rul. 76-244, 1976-1 C.B. 155 (granting exempt status to an organization providing home delivery of meals at cost or less to financially distressed elderly and handicapped persons).

Section 501(c)(3) provides for tax-exempt status for corporations, and any community chest, fund, or foundation, organized and operated exclusively for, among other things, charitable purposes. It does not provide exemption for an individual engaged in various activities, charitable or otherwise. Insofar as can be ascertained from the administrative record, Valfer engaged in various commendable activities--perhaps sometimes in the name of SNI--but the activities were those of Valfer, not SNI.

We accordingly conclude that SNI is not operated as a section 501(c)(3) organization.

<u>Decision will be entered</u>

<u>for respondent</u>.